UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| FRED CRUMP, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-229-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STATE FARM MUTUAL | ) | **MEMORANDUM OPINION** |
| AUTOMOBILE INSURANCE | ) | **AND ORDER** |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Fred Crump, Jr., began working as a State Farm insurance agent in Flemingsburg, Kentucky during the 1970s.  A State Farm Agent's Agreement ("the Agreement") governed his legal relationship with Defendants State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company.[1]  The events surrounding State Farm's termination of the Agreement on October 23, 2020, gave rise to this litigation.

State Farm has filed a motion to dismiss the Complaint.  [Record No. 9]  The motion will be granted and the Complaint will be dismissed because Crump has failed to assert any plausible claim for relief.

---

[1]  For simplicity, the Court generally refers to the defendants singularly as "State Farm," "the insurance company," or "the defendant."  Any distinctions between the State Farm parties are not material to this opinion, with one exception being consideration of termination payments under the Agreement.  The State Farm companies are distinguished in the portions of this opinion discussing termination payments.

# I. Background

## A. Factual and Procedural Background

Crump alleges that he received a letter from State Farm on October 23, 2020, "terminating the Agreement effective 11:59 p.m. on October 23, 2020, without prior warning or notice, and demanding [that he] return to State Farm all records and property." [Record No. 1-1, p. 5, ¶ 9] The plaintiff indicates that he requested a review that same date and was advised by State Farm that the "Agreement was terminated because he had allegedly violated [its] policies during an interaction with a single customer relating to her requested policy transfer." [*Id.* at p. 5, ¶ 10.] Crump asserts that this customer "was also a disgruntled former employee of Plaintiff's, who filed an unsubstantiated complaint based on this interaction with the Kentucky Department of Insurance" and that the complaint was dismissed after investigation. [*Id.*] State Farm also purportedly cited Crump's refusal "to meet with agency leadership via Skype to discuss these concerns" as a ground for termination, although he claims that he sent repeated emails indicating that he did not refuse to meet with State Farm representatives, but rather wanted an agenda before the meeting and had difficulty using Skype on the office technology implemented by State Farm. [*Id.* at p. 5, ¶ 11.]

Crump further asserts that, "in the years immediately preceding termination, State Farm agents or employees made repeated requests to Plaintiff to consider retirement or otherwise review his retirement benefits." [*Id.* at p. 6, ¶ 13.] He contends that his "intent to remain in business indefinitely" was "evidenced by his investment in and construction of a new state-of-the-art office building, at a cost of hundreds of thousands of dollars to Plaintiff," which was "built with State Farm's knowledge and support." [*Id.* at p. 6, ¶ 14.] Crump claims that

his termination was motivated by his age (72 yrs.), as well as State Farm's desire to "reclaim a percentage of commission that would otherwise be owed to [him]." [*Id.* at p. 6, ¶¶ 15-16.]

Crump filed this action in the Fleming Circuit Court on August 18, 2021. It was removed to this Court on September 7, 2021. [Record Nos. 1 and 1-1] The Complaint contains nine counts. In Count I, captioned "Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)," Crump asserts that State Farm terminated the Agreement without good cause and in bad faith. [Record No. 1-1, pp. 7-8, ¶¶ 20, 23]. Count II is captioned "Intentional Interference with Contract Rights," and alleges that Crump "was entitled to continued compensation in the form of termination payments, and additionally retirement benefits as dictated by the Agreement and State Farm policies generated and serviced by the Plaintiff." [*Id.* at p. 7, ¶ 26.] Crump claims that the bad faith transfer of his former accounts to the Maysville, Kentucky State Farm office deprived him of these retirement benefits owed under the Agreement. [*Id.* at p. 7, ¶¶ 26-29.]

In Count III's fraud claim, Crump asserts that "State Farm hid its intent to terminate" him and did not disclose that complaints jeopardized the Agreement while allowing him to construct the new office building and participating in its construction. [*Id.* at pp. 7-8, ¶¶ 31-35.] He also claims that State Farm did not inform him that the Agreement could be unilaterally and immediately terminated. [*Id.* at p. 8, ¶ 35.] Count IV contains allegations that the State Farm's representations and concealment of material facts during the construction estop it from terminating the Agreement or, alternatively, entitle him to compensation for construction expenses. [*Id.* at pp. 8-9, ¶¶ 37-42.]

In Count V, Crump alleges a Kentucky Civil Rights Act ("KCRA") age discrimination claim. He asserts that State Farm's stated grounds for termination were pretextual and that

termination was instead "undertaken as a systematic action . . . to replace higher paid older workers with younger, less experienced, and lower compensated individuals." [*Id.* at p. 9, ¶ 45-46.] In support, Crump posits that, "because of Plaintiff's age, and the length of time he had served as an agent for State Farm under the Agreement, the terms of the agreement were less favorable to State Farm than agreements that State Farm may enter with a younger agent." [*Id.* at p. 9, ¶ 47.]

In Count VI, Crump makes a slander claim. He pleads that "State Farm terminated the Agreement with Plaintiff for attempting to assist or otherwise communicate with an unsatisfied customer in her transfer request", but "characterized the reason for terminating Plaintiff as violation of State Farm's policies." [*Id.* at p. 10, ¶¶ 52-53.] He claims that "State Farm thereafter caused or permitted information about the termination to be disseminated to customers and the public in general." [*Id.* at p. 10, ¶ 53.] Crump further states that State Farm's Maysville agent "sent a notice to policyholders which stated that Plaintiff was no longer affiliated with State Farm without providing any additional information." [*Id.* at p. 10, ¶ 54.] This notice, according to the plaintiff, caused him reputational harm. [*Id.* at p. 10, ¶¶ 55-56.]

Count VII contains a claim for unjust enrichment, asking that the Court grant restitution and disgorgement of profits, benefits, and other compensation retained by State Farm in light of its wrongful "recei[pt] [of] Plaintiff's business records and property while breaching its fiduciary duties to the Plaintiff." [*Id.* at p. 11, ¶¶ 59-60.] Count VIII outlines a claim for "Unconscionable Contract," asserting that Crump was unable to negotiate the terms of the Agreement, which "unduly favors State Farm" at his expense in that "State Farm imposed its own terms of termination and was free to change the terms of the termination and Agreement

- 4 -

by mere acceptance of those changes." [*Id.* at p. 11, ¶¶ 62-63.] Finally, Crump asserts a stand-alone claim for punitive damages in Count IX. [*Id.* at p. 12, ¶¶ 65-66.]

## B. Relevant Terms of the Agreement

Crump has attached a copy of the Agreement to his Complaint. [Record No. 1-1, pp. 13-18] Several provisions are relevant here. First, certain portions of the Agreement indicate that Crump was intended to serve as an independent contractor, rather than an employee, of State Farm. For example, the Preamble states that agents operate best as independent contractors and that Crump has "chosen this independent contractor relationship . . . ." [*Id.* at p. 13.] And Section I(B) of the Agreement states: "You are an independent contractor for all purposes. As such you have full control of your daily activities, with the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement." [*Id.*]

But Crump alleges that he was a *de facto* employee of State Farm despite this language in the Agreement. [*Id.* at p. 4, ¶ 7.] He claims that "State Farm exercised complete control over the manner and means in which Plaintiff and his agency operated", and cites to various provisions of the Agreement that he believes support these points, including: (1) Section I(C), which states "State Farm will furnish you, without charge, manuals, forms, records, and such other materials and supplies as we may deem advisable to provide," and that such items will "remain the property" of State Farm; (2) Section I(D)'s provisions that "information regarding names, addresses, and ages of policyholders[;] . . . the description and location of insured property; and expiration or renewal dates of State Farm policies . . ." are, mostly, "trade secrets wholly owned by [State Farm]" and that "[a]ll forms and other materials . . . upon which this information is recorded" are the "sole and exclusive property" of State Farm; (3) Section I(E),

which prohibits Crump from establishing an office other than his principal office without its prior consent; (4) the restrictions on "using advertisements referring to [State Farm] or identifying [State farm] in any way without . . . prior approval" found in Section I(F); (5) Section I(G)'s requirement that "fulfillment of this Agreement will be your principal occupation" and prohibition against writing or servicing insurance in most circumstances for another entity absent consent from State Farm; (6) Section II(A)'s provision that State Farm "will make payments to the Agent as set forth in the applicable Schedule of Payments" and State Farm's reservation of the "the right to fix and determine the amount, content, and conditions of any bonuses, awards, prizes, and allowances" in Section II(C); and (7) Section III(E)'s non-compete terms.  [*Id.* (citing *id.* at pp. 14-15).]

Second, the Agreement states that it will "become effective March 1,1977, and shall continue until terminated as herein provided."  [*Id.* at p. 13.]  Section III(A) provides the procedure for terminating the Agreement:

> This Agreement will terminate upon your death.  You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other's last known address.  The date of termination shall be the date specified in the notice, but in the event no date is specified, the date of termination shall be the date of delivery if the notice is delivered, or the date of the postmark, if the notice is mailed.  Either party can accelerate the date of termination specified by the other by giving written notice of termination in accordance with this paragraph.

[*Id.* at p. 15.]  Section III(D) states that, "[w]ithin ten days after the termination of this Agreement, all property belonging to the [State Farm] Companies shall be returned or made available for return to the Companies or their authorized representative."  [*Id.*]

Third, Section IV of the Agreement provides for termination payments to Crump from the four State Farm companies that are parties to the Agreement in this case.  Under this

- 6 -

section, the amounts of certain payments from State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Insurance Company, and State Farm General Insurance Company account for, *inter alia*, service compensation or commissions on policies attributable to Crump "which remain in the same state" for the first 12 months following termination of the Agreement. [*Id.* at pp. 15-17.] The Agreement qualifies this "same state" provision for termination payments made by State Farm Mutual Automobile Insurance Company relating to service compensation on "Health Insurance Policies" for the first 12 months following termination by:

> except[ing] those policies which became available in the same state for assignment to an agent as a result of a termination of an agreement between the Company and an agent, or as a result of an agreement between an agent and the Companies pursuant to the applicable paragraph of a State Farm Agent's Agreement . . . .

[*Id.* at p. 16.] Payments from State Farm Life Insurance Company do not account for policies remaining in the "same state" after termination. [*Id.* at p. 17.]

## II. Legal Standard

Federal pleading standards demand "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a party fails to "state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court must accept all "well-pleaded factual allegations" as true and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

But a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, it must "contain sufficient factual matter . . . to 'state a claim

to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This standard requires "either 'direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Dismissal is warranted when this standard is not satisfied.

"Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). Examination of matters outside the pleadings generally requires conversion of a motion to dismiss to a Rule 56 motion for summary judgment. *Id.* "However, a court may consider 'exhibits attached [to the complaint] . . . so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Id.* at 680-81 (first alteration in original) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Additionally, it is well-settled that, "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (alteration in original) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (per curiam)).

Here, the Agreement is exhibited to the Complaint, referenced in the pleading, and central to the claims asserted therein. The Court will consider it in its Rule 12(b)(6) analysis. And to the extent the allegations of the Complaint are contradicted by the terms of the Agreement, the contract controls.

### III.  Analysis

State Farm filed the pending motion on September 28, 2021.  It offers various arguments in support of its position that every count of the Complaint should be dismissed. [*See* Record No. 9.]  The Court will address each argument in turn.

### A.  Age Discrimination

### i.  Employee or Independent Contractor Status

Whether Crump was an employee or independent contractor of State Farm bears discussion at the outset of the analysis.  The parties directly address the issue in the context of Count V's age discrimination claim brought under the KCRA, which applies to employees but not independent contractors.  *See Steilberg v. C2 Facility Sols., LLC*, 275 S.W.3d 732, 735-36 (Ky. Ct. App. 2008).

State Farm contends that "the language of the Agreement makes plain that Mr. Crump was an independent contractor, not an employee."  [Record No. 9, p. 10]  State Farm argues that the KCRA age discrimination claim must be dismissed because the contract specifies that the plaintiff was an independent contractor and because such individuals cannot bring suit for violations of the KCRA.  [*Id.* at pp. 10-11.]

Crump responds that common law principles govern the employee-independent contractor inquiry, requiring a fact-based determination examining control over the agent. [Record No. 10, pp. 8-10]  He further contends that he has adequately pleaded facts concerning State Farm's control over his business to support his argument that he was an employee of the insurance company.  [*Id.* at pp. 9-10.]

The Court agrees with Crump on this point.  Kentucky courts have adopted the federal practice of using common law factors to determine whether an individual is an employee or

independent contractor for the purposes of the KCRA.  *Steilberg*, 275 S.W.3d at 735-36. Specifically, the court in *Steilberg* looked to following:

> the hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's employee benefits; and tax treatment of the hired party's compensation.

*Id.* (citing *Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir. 2004); *Simpson v. Ernst & Young*, 100 F.3d 436, 443 (6th Cir. 1996)); *see also Powers v. Keeneland Assoc., Inc.*, No. 2015-CA-001868–MR, 2017 WL 1193174, at *2-3 (Ky. Ct. App. March 31, 2017) (unpublished) (applying similar, albeit slightly different common law factors found in Restatement (Second) of Agency § 220(2) (1958)).  Further, courts applying Kentucky law have been notably reluctant to find that contractual provisions designating a party as an independent contractor end the employee-independent contractor inquiry.  *See*, *e.g.*, *Taylor v. Jewish Hosp. & St. Mary's Healthcare, Inc.*, 26 F. Supp. 3d 642, 647-49 (W.D. Ky. 2014); *Crunk v. Dean Milk Co., Inc.*, No. 3:06CV–609–DW, 2008 WL 2473662, at *6 (W.D. Ky. June 17, 2008); *Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 577, 579-80 (Ky. 2002); *see also*, *e.g.*, *Beauchamp v. Fed. Home Loan Mortg, Corp.*, 658 F. App'x 202, 205 (6th Cir. 2016); *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999).

Thus, it is clear that an employee or independent contractor determination under the KCRA "requires a careful case-by-case consideration of the facts."  *Steilberg*, 275 S.W.3d at 736.  And Crump sufficiently supports his claim of employee classification by pleading relevant facts tethered to specific provisions of the Agreement.  [*See* Record No. 1-1, p. 4, ¶

7.]  Thus, the Court will assume for the purposes of this opinion that he can establish that he was a State Farm employee.  As a result, the portions of the Agreement denoting independent contractor status do not, alone, warrant dismissal of Count V.

### ii.  Other Grounds for Dismissal of the KCRA Claim

Notwithstanding the employee-independent contractor classification issue, State Farm makes additional arguments that Crump has failed to plead a plausible KCRA claim.  The company contends that: (1) the plaintiff's allegations concerning State Farm's purported scheme to replace older agents with younger, less expensive agents are inadequate to establish an age discrimination claim; (2) the Complaint fails to establish a disparate-impact age discrimination claim; and (3) Crump has emphasized a "motivating factor" causation standard even though but-for causation is required.  [Record No. 9, pp. 12-13.]

Crump does not counter these arguments, except to acknowledge that he must demonstrate but-for causation and assert that the Complaint sufficiently pleads facts accounting for that standard.  [Record No. 10, p. 10]  He asks the Court to grant leave to amend the Complaint if it should find it necessary for him to explicitly "allege that 'but for' his age the agency agreement would not have been terminated."  [*Id.*]

KRS § 344.040(1)(a) provides that it is unlawful for an employer "to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . . ."  "[T]he civil rights provisions of KRS Chapter 344 [are interpreted] consistent with the applicable federal anti-discrimination laws." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005).  Specifically, age discrimination "[c]laims brought under the KCRA are analyzed in the same manner as [federal] ADEA [Age

- 11 -

Discrimination in Employment Act] claims." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (citations and internal quotation marks omitted).

The factual allegations pertaining to the KCRA claim all relate to State Farm's purportedly "systemic" plan to replace higher paid and older agents with younger, less experienced agents so that the insurance company could save money. But as State Farm contends [Record no. 9, p. 12], this theory is not a basis for a cognizable age discrimination claim.

In the ADEA context, the United States Court of Appeals for the Sixth Circuit has observed that the law "prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors — pension status, seniority, wage rate — that are empirically correlated with age" because such factors do not relate to "inaccurate and stigmatizing stereotypes" associated with age. *Allen v. Diebold*, 33 F.3d 674, 676-77 (6th Cir. 1994) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610-11 (1993)); *accord Highlands Hosp.*, 545 F.3d at 399-400 (same when analyzing ADEA and KCRA claims). While these factors may not be used by employers as proxies for actual age-based discrimination, they are not grounds for relief themselves. *Id.* at 676 (citing *Hazen Paper*, 507 U.S. at 610-11). Thus, "plaintiffs must allege that [defendants] discriminated against them because they were old, not because they were expensive." *Id.* at 677; *accord Holum v. URS Fed. Serv., Inc.*, No. 5:18-cv-35-JMH, 2020 WL 1876331, at *6 (E.D. Ky. Apr. 15, 2020); *Woods v. Kentucky West Virginia Gas Co.*, No. Civ.A. 70458-DCR, 2005 WL 1657089, at *4 (E.D. Ky. July 14, 2005).

- 12 -

Crump relies upon these tangential "other factors" to assert his age discrimination claim.  Indeed, In Count V of the Complaint he alleges that the reasons provided for his termination were pretexts for a lawful cost-cutting policy, rather than suggesting that the cost-cutting policy was a proxy for unlawful motives.  And his response to the pending motion makes no effort to rebut State Farm's correct contention that such allegations are inadequate.

The Court also notes that it is not entirely clear whether Crump attempts to assert an age discrimination claim based on a disparate-impact theory, inasmuch as such claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Smith v. City of Jackson*, 544 U.S. 228, 239 (2005) (citation and internal quotation marks omitted).  To the contrary, the allegations in the Complaint appear to rely on a disparate-treatment theory, through which "liability depends on whether the protected trait [*i.e.*, age] actually motivated the employer's decision." *Hazen Paper*, 507 U.S. at 610 (collecting cases).

Insofar as he does, however, attempt to assert a disparate-impact claim, Crump "must isolate and identify the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Highlands Hosp.*, 545 F.3d at 403 (emphasis in original) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).  "This specific-practice requirement is important because isolating and identifying such practices 'is not a trivial burden,' and involves more than simply 'point[ing] to a generalized policy that leads to such an impact.'" *Id.* (alteration in original) (quoting *Meacham*, 554 U.S. at 101).  As State Farm argues [Record No. 9, pp. 12-13], the Complaint fails to specify any specific practice producing statistical disparities between older State Farm agents and their younger counterparts other than his generalized assertions about "systemic" cost-cutting measures.

- 13 -

And importantly, the Sixth Circuit has also applied the cost-cutting reasoning of *Diebold* and *Hazen Paper* to age discrimination claims brought solely under disparate-impact theories. *See Slenzka v. Landstar Ranger, Inc.*, 122 F. App'x 809, 814-15 (6th Cir. 2004) (applying *Diebold* to find that the disparate-impact claims "suffer[ed] from the lack of any evidence suggesting that the alleged deprivation of benefits is 'because of' their age, as it must be to violate the ADEA" where there was "no suggestion . . . that Plaintiffs' alleged injury was caused by anything other than Landstar's shift to non-union labor to save money."). The plaintiff does not respond to the disparate-impact argument raised by State Farm, but even if he had, the facts alleged do not appear to give rise to any plausible claim under a disparate-impact theory.

Looking past the allegations concerning State Farm's purported scheme, Crump is left with allegations that he was over 40 years of age and the termination decision "was . . . motivated by his age, 72" and made "because of [his] age." [Record No. 1-1, pp. 6, ¶ 16, 9, ¶ 47] But bare allegations that a plaintiff belongs to a protected class (individuals aged 40 and over) and was terminated due to his age are not sufficient to plausibly state a claim for age discrimination under the KCRA. *See Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015) ("Downs's bare allegation that he was terminated 'due to his age' cannot form the basis of his complaint. Similarly, his membership in the protected group cannot, alone, support his claim.") (citing *Han v. Univ. of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012)).

And while he requests leave to amend the Complaint to clarify the issue of but-for causation, Crump has not requested leave to correct the other deficiencies identified by State

Farm and has offered no indication that he could amend the Complaint to state a plausible age discrimination claim. As a result, the claim contained in Count V will be dismissed.

### B. Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)

State Farm next argues that Count I's breach of the implied covenant of good faith and fair dealing claim should be dismissed for the following reasons: (1) Crump does not cite any underlying contractual provision that could give rise to this claim; (2) the Agreement was terminable at-will, and the implied covenant of good faith and fair dealing does not prevent a party from enforcing the terms of the contract; and (3) the insurance company's alleged animus toward the plaintiff is irrelevant to a good faith and fair dealing analysis. [Record Nos. 9, pp. 3-5 and 13, pp. 1-2] Crump asserts that he can avoid the contractual hurdles by relying on a public policy exception to the at-will employment doctrine and specifically claims that State Farm has violated the policy found in KRS § 344.020(1)(b) by terminating him. [Record No. 10, pp. 3-5]

"Implicit in every contract in Kentucky is the covenant of good faith and fair dealing." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 816 (E.D. Ky. 2013) (citing *Ranier v. Mt. Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991); *LJM Corp. v. Maysville Hotel Grp.*, LLC, No. 2004–CA–120–MR, 2005 WL 790602, at *2 (Ky. Ct. App. Apr. 8, 2005) (unpublished)). "This covenant has been interpreted to 'mean that contracts impose on the parties thereto a duty to do everything necessary to carry [the contract] out.'" *Id.* (alteration in original) (quoting *LJM Corp.*, 2005 WL 790602, at *2). Thus, a "party's breach of the covenant of good faith and fair dealing can potentially be the basis for

- 15 -

a viable breach of contract claim,"[2] *id.* at 816-17 (citations omitted), but the "implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights." *Farmers Bank and Trust Co. of Georgetown, Kentucky v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citing *Hunt Enter., Inc. v. John Deere Indus. Equip. Co.*, 162 F.3d 1161, 1998 WL 552795, at *2 (6th Cir. 1998) (unpublished table opinion)); *accord Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) ("[A] party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing.").

Consistent with these principles, the implied covenant of good faith and fair dealing will not prevent a party from terminating a contract at-will when the contract so provides. *Hutson, Inc. v. Windsor*, No. 5:12-CV-00191-GNS-LLK, 2015 WL 4133670, at *4 (W.D. Ky. July 8, 2015); *Darby v. Gordon Food Servs., Inc.*, No. 3:11–cv–00646–DJH, 2015 WL 3622529, at *11 (W.D. Ky. June 9, 2015); *cf. Back v. Nestle USA, Inc.*, No. 5:08-290-JMH, 2008 WL 4399492, at *2 (E.D. Ky. Sept. 23, 2008) (complaint did not state a claim for breach of the implied covenant of good faith and fair dealing where employer had a contractual right to terminate the plaintiff for cause and the plaintiff did not allege any facts suggesting a breach of this provision).  It makes no difference whether the terminating party bears animus toward the terminated party.  *See*, *e.g.*, *Hutson*, 2015 WL 4133670, at *4 ("Because the parties agreed

---

[2]  There is a thread of caselaw indicating that no contractual cause of action for breach of the implied covenant of good faith and fair dealing exists in the employment law context.  *See*, *e.g.*, *Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 178 (6th Cir. 2001); *Temple v. Pflugner*, 866 F. Supp. 2d 735, 745 (E.D. Ky. 2011); *Baumann v. Media Gen. Operations, Inc.*, No. 04-463-KSF, 2006 WL 8445443, at *4 (E.D. Ky. Feb. 2, 2006).  The parties do not brief this issue, and the Court assumes, without deciding, that the Agreement is a type of contract that could conceivably give rise to the claim asserted by Crump.

that Windsor's employment was 'at-will,' under Kentucky law Hutson was free to discharge Windsor for good cause, for no cause, or for a morally indefensible cause and could not be required to adjust its practices to foster Windsor's success absent a specific provision of the agreement.") (citing *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)).

The Agreement was plainly terminable at-will, either by State Farm or by Crump.  And Crump admits that this is true.  [Record No. 10, pp. 3, 12]  State Farm merely exercised its contractual rights when it terminated the contract.

There is, as Crump contends, a public policy exception to employment at-will.  *E.g.*, *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  This exception requires that:

> 1)  The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.
>
> 2)  That policy must be evidenced by a constitutional or statutory provision.
>
> 3)  The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Id.*  In his public policy exception argument, Crump relies on the statutory provision of KRS § 344.020 ("Purposes and construction of this chapter; effect"), which establishes that one purpose of the KCRA is:

> [t]o safeguard all individuals within the state from discrimination because of familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified individual with a disability as defined in KRS 344.010 and KRS 344.030; thereby to protect their interest in personal dignity and freedom from humiliation, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest which would menace its democratic institutions, to preserve the public safety, health, and general welfare, and to further the interest, rights, and privileges of individuals within the state . . . .

KRS § 344.020(1)(b).

- 17 -

Crump does not mention the public policy exception in his Complaint.  But setting that aside, the policy stated in KRS § 344.020(1)(b) is unavailing.  As the foregoing section explains in detail, he has not pleaded facts to support his claim that he was discriminated against *because of* his age.  Thus, he has not pleaded facts that demonstrate his discharge was contrary to the policy enunciated in KRS § 344.020(1)(b).

Additionally, as State Farm argues [Record No. 13, p. 3], the KCRA generally preempts claims premised on the public policy stated in that specific statute.  *See*, *e.g.*, *Grzyb*, 700 S.W.2d at 401.  "An employee cannot sue under public policy if a statute already provides a cause of action and relief for his claim."  *Adkins v. Excel Mining, LLC*, 214 F. Supp. 3d 617, 627 (E.D. Ky. 2016) (citing *Grzyb*, 700 S.W.2d at 401 ("Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute.")).  Because the KCRA provides a statutory cause of action and remedy for employee terminations grounded in age discrimination, Crump cannot use a KCRA-based public policy theory to state a contractual claim that circumvents the fact that the Agreement was terminable at-will.  *See McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 860 (E.D. Ky. 2015) (applying this reasoning to a claim premised on age discrimination); *see also Adkins*, 214 F. Supp. 3d at 627 (same for a claim premised on disability discrimination); *Grzyb*, 700 S.W.2d at 401 (same for a claim premised on sex discrimination).

Thus, because Crump has not plausibly stated a claim for breach of the implied covenant of good faith and fair dealing, the claim contained in Count I will be dismissed.

## C.  Intentional Interference with Contract Rights

State Farm argues that Count II's intentional interference with contract rights claim should be dismissed because Crump fails to identify a breach of any specific provision of the Agreement.  [Record No. 9, pp. 5-6]  State Farm asserts that Count II claims interference with "termination payments" and "retirement benefits" but only makes factual allegations regarding retirement benefits, which are not provided for in the Agreement.  [*Id.* at p. 5.]  To the extent he does actually contest termination payments, State Farm asserts that Crump has identified no breach of the Agreement because the termination payments are calculated by considering, *inter alia*, customer accounts that remain in the same state after termination and the accounts allegedly transferred to the Maysville office would remain in Kentucky.  [Record Nos. 9, p. 6 and 13, pp. 3-4]  The only exceptions are the State Farm Mutual Automobile Insurance Company payments tied to health insurance policies, but State Farm asserts that transfer of these policies is contemplated by the Agreement.  [Record No. 9, p. 6]

Crump does not contest the "retirement benefits" argument, but asserts that a reduction in the number of policies serviced in Flemingsburg can affect his termination payments.  [*See* Record No. 10, p. 5.]  He indicates that it would be appropriate to dismiss Count II if State Farm would stipulate that "termination payments are determined regardless that the policies are serviced out of market post termination."  [*Id.*]  State Farm has declined to stipulate to this point and asserts that dismissal is warranted based on the language of the contract.  [Record No. 13, pp. 3-4]

A tortious interference with a contract claim requires: "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) that the defendant intended to cause a breach; (4) that the defendant's actions did indeed cause a breach; (5) that damages resulted to

the plaintiff, and (6) that the defendant had no privilege or justification to excuse its conduct." *Louisville Outlet Shoppes, LLC v. Paragon Outlet Partners, LLC*, No. 2014–CA–001699–MR, 2016 WL 929740, at *2 (Ky. Ct. App. Mar. 11, 2016) (unpublished) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012)).  Thus, Crump must plead, *inter alia*, that State Farm's actions caused a breach of the Agreement.[3]

Crump does not make any arguments regarding other "retirement benefits" in his response to the motion to dismiss and [as noted] acknowledges that Count II may be dismissed if State Farm stipulates to his understanding of termination payments under the Agreement. Thus, Count II appears to concern the termination payments owed to Crump rather than some other unspecified "retirement benefits."

But assuming the claim concerns the termination payments, no allegation of the Complaint suggests a breach of contract.  Most of the termination payments to be made by State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Insurance Company, and State Farm General Insurance Company account for, *inter alia*, service compensation or commissions on policies "which remain in the same state" for the first 12 months following termination of the Agreement, and this "same state" provision does not apply to payments by State Farm Life Insurance Company.  The alleged transfer of accounts from

---

[3]  It is not clear why Crump frames Count II as a claim for "intentional interference with contract rights."  Such claims ordinarily involve a contract between the plaintiff and a third party, with the defendant's conduct resulting in a breach of that contract.  *See*, *e.g.*, *Indus. Equip. Co. v. Emerson Elec. Co.*, 554 F.2d 276, 289 (6th Cir. 1977); *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 755 (W.D. Ky. 2006); *Carmichael-Lynch-Nolan Advert. Agency, Inc. v. Bennett & Assocs., Inc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977).  The contract at issue here was between the plaintiff and the defendant, and the allegedly tortious conduct was that of the defendant.  Because State Farm does not raise this issue and maintains only that Crump has not adequately pleaded an intentional interference claim, the Court will assume that the plaintiff could bring this cause of action based on the defendant's conduct.

the Flemingsburg State Farm office to the Maysville State Farm office would not affect these payments under the relevant provisions of the Agreement because both Flemingsburg and Maysville are located in Kentucky.

And as described above, the Agreement expressly qualifies the "same state" provision for payments by State Farm Mutual Automobile Insurance Company connected to "Health Insurance Policies."  As State Farm argues, the Agreement contemplates that service compensation on some health insurance policies that continue for 12 months after its termination will not adhere to Crump's benefit if they are assigned to another agent.  Given this exception in the contract, Crump has not alleged any facts or offered any arguments suggesting that State Farm's conduct has caused a breach of contract regarding termination payments.  Accordingly, the claim outlined in Count II will be dismissed.

### D.  Fraud and Estoppel

Next, State Farm contends that the fraud (Count III) and estoppel (Count IV) claims should be dismissed because Crump cannot establish reasonable reliance on the insurance company's conduct as a matter of law where the Agreement provided for at-will termination of the contract.  [Record No. 9, pp. 6-9]  Crump responds that the reasonableness of his reliance on State Farm's conduct is a question of fact that should be left to the jury.  [Record No. 10, pp. 5-8]

Crump's response clarifies that the fraud and estoppel claims center on whether "State Farm's approvals of the plans and construction, and continued selling of State Farm signs and other items [were] some indication[s] that he was justified to invest several hundred thousand dollars to construct a new office to conduct State Farm's business."  [*Id.* at pp. 6-8.]  When considered in conjunction with State Farm's allegedly undisclosed knowledge that it would

- 21 -

terminate the Agreement due to complaints regarding his services, Crump believes that the insurance company's conduct is actionable.  [*See id.*; Record No. 1-1, ¶¶ 30-42.]

Fraudulent misrepresentation claims require a showing of reasonable reliance.  *See*, *e.g.*, *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 210 (6th Cir. 2019).  And courts have considered, or at least assumed, fraud by omission claims to require the same.  *See*, *e.g.*, *id.* at 213-14; *Kannapel v. Int'l Bus. Machs. Corp.*, No. 3:20-cv-500-BJB-RSE, 2021 WL 4164689, at *4 n. 4 (W.D. Ky. Sept. 13, 2021).  The exact contours of the "fraud" claim pleaded by Crump are not entirely clear, inasmuch as it appears to allege facts indicative of both fraudulent misrepresentation and fraud by omission, but Crump acknowledges that reasonable reliance is required for Count III.  [*See* Record No. 10, p. 6.]  Equitable estoppel likewise requires reasonable reliance.  *See*, *e.g.*, *Williams v. Hawkins*, 594 S.W.3d 189, 197 (Ky. 2020) (citing *Gailor v. Alsabi*, 990 S.W.2d 597, 604 (Ky. 1999)).

"[W]hether reliance is justified (or as sometimes stated, reasonable) is a question of fact in all but the rarest of instances."  *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 47 (Ky. 2018).  But as State Farm points out [Record No. 9, p. 8], the Court of Appeals of Kentucky has "h[e]ld that as a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing . . . ."  *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003) (citing *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30 (1st Cir. 1988)); *accord Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.*, 379 S.W.2d 736, 739 (Ky. 1964) ("[O]ral agreements or representations cannot be proved or relied upon if they contradict a positive provision of the written contract.") (quoting *Dunn v. Tate*, 268 S.W.2d 925, 927 (Ky. Ct. App. 1954)).

- 22 -

The relevant claims are premised on representations or omissions that allegedly led Crump to believe that he would not or could not be terminated such that it was appropriate for him to expend funds to construct a new office building for his Flemingsburg State Farm agency. The rule in *Rivermont* has been applied in similar circumstances.

For example, in *Turner v. Leggett & Platt, Inc.*, the president of the defendant company's plastics division told the plaintiff during an interview that he would be a long-term employee with a "long career" if hired. No. 5:08–CV–00113–TBR, 2010 WL 1049849, at *1 (W.D. Ky. Mar. 19, 2010). The plaintiff, who was hired, received a job manual and submitted several documents, including a job application, all of which plainly indicated that he would be an at-will employee. *Id.* at *1-3. The plaintiff later learned that the plastics division would be sold but was told by a supervisor that he would be employed until the sale occurred. *Id.* at *2.

The company terminated the plaintiff prior to the sale of the plastics division. *Id.* at *3. He brought, *inter alia*, a claim for fraudulent misrepresentation, which was dismissed on summary judgment. *Id.* at *6-7. The court applied the rule in *Rivermont* to find both that: (1) the plaintiff could not have reasonably relied on the interview statements because the job application he submitted after the interview but prior to his hiring clearly denoted his at-will employment status; and, more significantly, (2) the plaintiff could not have reasonably relied on the statement by his supervisor after he learned of the plan to sell the plastics division because he had obtained the manual and submitted the documents denoting at-will employment prior to the supervisor's statement. *Id.* at *7. The claim was dismissed because "the oral promises alleged by [the] Plaintiff [we]re in direct contradiction of the written records produced as evidence in [the] case . . . ." *Id.*

- 23 -

Similarly, the plaintiffs in *Bisig* were initially employed by a company acquired by Time Warner, which allegedly promised them continued employment and better pay than its predecessor in interest.  940 F.3d at 209.  However, the plaintiffs also signed three at-will employment disclaimers "on or before" the acquisition.  *Id.*  The plaintiffs resigned and sued when Time Warner eventually introduced a plan that would require them to reapply to their specific positions and risk assignment to lower-paid positions.  *Id.*

The district court granted summary judgment to Time Warner and the Sixth Circuit affirmed that judgment.  *Id.* at 208.  Addressing, *inter alia*, the plaintiffs' fraudulent misrepresentation claims, the Sixth Circuit noted that the plaintiffs signed the relevant at-will employment disclaimers prior to detrimentally relying on the alleged promises of continued employment, making the issue "whether it was *reasonable* for Plaintiffs to rely on Time Warner's promises of . . . continued employment even though they had read and accepted this notice."  *Id.* at 210 (emphasis in original).  Applying the rule in *Rivermont*, the Sixth Circuit found such reliance not to be reasonable because the "promises of continued employment directly conflicted" with the earlier at-will employment disclaimers.  *Id.* at 211-12.

*Turner* and *Bisig* instruct that the *Rivermont* rule applies such that a plaintiff cannot establish reasonable reliance on promises of continued employment when he has previously acknowledged in writing that the defendant may terminate him at-will.  They are distinct from the present case in that they did not involve documents as formal as the Agreement, but "[i]f anything, the existence of a written contract makes the case against reliance stronger" in the context of a *Rivermont* analysis.  *Hall v. Rag-O-Rama, LLC*, Nos. 20-6059/6090, 2021 WL 5088708, at *8 (6th Cir. Nov. 2, 2021) (unpublished).  These cases also involved *explicit promises* of continued employment, whereas Crump appears to allege that State Farm's

conduct *implied* that he could not or would not be terminated such that he deemed it appropriate to proceed with the construction of the new office building. But this is also an inconsequential distinction. The indirect nature of the allegedly tortious conduct makes any reliance less reasonable than if it were premised on explicit promises that he would continue to serve as a State Farm agent.

The caselaw plainly indicates that any insinuation by State Farm that the Agreement could not or would not be terminated contradicted the at-will termination provision. Thus, Crump's contract with State Farm, which was apparently operative for decades prior to the events giving rise to this action, controls and Crump cannot establish reasonable reliance as a matter of law.

Crump's only argument against the application of *Rivermont* and dismissal of Counts III and IV is that the issue of reasonable reliance should be left to a jury. But *Turner* and *Bisig*, which were decided on summary judgment, indicate otherwise when a plaintiff has previously acknowledged in writing that his contract could be terminated at-will. Accordingly, the claims contained in Counts III and IV will be dismissed.

## E. Slander

State Farm argues that the slander claim contained in Count VI should be dismissed because the plaintiff has not alleged that any false statement was published and the only specific statement identified in the claim, *i.e.*, the statement in the Maysville agent's notice that Crump was no longer affiliated with the insurance company after his termination, was truthful. [Record Nos. 9, pp. 13-14 and 13, pp. 6-7] The plaintiff responds that he has sufficiently alleged that "that State Farm told all of Crump's customers that Crump's agency was terminated due to 'violation of State Farm's policies.'" [Record No. 10, p. 11]

- 25 -

Alternatively, he asks that he be granted leave to amend his complaint to expressly assert that State Farm's statements were false.  [*Id.*]

A defamation claim for slander or libel contains the following elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Süd–Chemie, Inc.* 458 S.W.3d 276, 281-82 (Ky. 2014) (internal citation omitted) (quoting Restatement (Second) of Torts § 558 (1977)).  The first element requires both false and defamatory language, and "a statement that is true is not actionable even if defamatory." *Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 473 (Ky. Ct. App. 2017).  As for the second element, "[t]he notion of 'publication' is a term of art, and defamatory language is 'published' when it is intentionally or negligently communicated to someone other than the party defamed." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004).   Further, "vague allegations of potential defamatory statements about Plaintiffs made to unspecified third parties are insufficient to state a claim upon which relief can be granted." *Hickman v. State Farm Prop. & Cas. Ins. Co.*, No. 3:17-CV-00184-CRS, 2017 WL 5892212, at *4 (W.D. Ky. Nov. 29, 2017); *cf. Bus. Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10–CV–00669, 2012 WL 6020400, at *20 (W.D. Ky. Dec. 3, 2012) (finding that the plaintiffs' defamation allegations were not too vague where "Plaintiffs identified the content of the alleged defamatory statements as well as to whom those statements were allegedly made.").

State Farm is correct to argue that Count VI, as pleaded, does not state a plausible defamation claim.  The Complaint alleges that the Maysville agent informed Crump's former

customers that the "Plaintiff was no longer affiliated with State Farm."  [Record No. 1-1, p. 10, ¶ 54]  The Complaint identifies no other specific statement made by State Farm to identifiable third parties.  Accepting the other facts pleaded in the Complaint, this statement from the notice appears to be objectively true – he was, in fact, no longer affiliated with State Farm.  And significantly, Crump alleges that the Maysville agent's notice did not "provid[e] any additional information" to his former customers.  [*Id.*]  Thus, the plaintiff has represented in Count VI that the notice contained no actionably false statements about him.

Crump contends that this count should be read to allege that State Farm falsely informed his customers that the Agreement was terminated due to a violation of company policies.  But he does not actually make this assertion in Count VI.  The claim instead asserts that State Farm characterized the reason for his termination as a violation of its policies, makes a vague allegation that the defendant "caused or permitted information about the termination to be disseminated to customers and the public in general," and specifically alleges that the Maysville agent sent the notice to his former customers.  [Record No. 1-1, p. 10, ¶¶ 52-54]  He then proceeds to plead that this truthful notice, rather than a different false statement published to customers or other third parties, caused him reputational harm.  [*See id.* at p. 10, ¶ 55-56.]  An individual reading Count VI is left with the conclusion that the specific statement Crump believes to be defamatory is that of the Maysville agent's notice to his former customers.  But the content of that notice, as pleaded, was truthful and does not give rise to relief.

The Court also agrees with State Farm that leave to amend should not be granted.  [*See* Record No. 13, p. 7.]  Under Rule 15(a)(2), leave to amend should be freely given "when justice so requires."  However, "the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed

amendment." *Roskam Baking Co., Inc. v. Lanham Mach. Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citing *Kostyu v. Ford Motor Co.*, 798 F.2d 1414, 1986 WL 16190, at *2 (6th Cir. July 28, 1986) (unpublished table opinion)).   Crump has not offered a proposed amendment for Count VI.

Further, Crump has not offered any new facts that would suggest he can plead a plausible defamation claim.   He has not indicated that he can plead facts establishing that the Maysville agent's notice contained any falsities.   He likewise has not submitted that State Farm made a different specific, false, and defamatory statement to his former customers or other identifiable third parties.   Absent such arguments, dismissal of Count VI is appropriate.

### F.  Unjust Enrichment

Next, State Farm contends that the claim contained in Count VII should be dismissed because the terms of the Agreement control the issues raised in the unjust enrichment claim and Crump cannot assert that the insurance company inequitably retained any benefits owed to him.   [Record Nos. 9, pp. 14-16 and 13, pp. 8-9]   Crump argues that State Farm has been unjustly enriched for the reasons alleged in his intentional interference claim, *i.e.*, the shifting of accounts outside his Flemingsburg market to reduce his termination payments, as well as his allegations that "State Farm wrongfully terminated the [Agreement], and in the process took possession and title to all of Crump's long[-]time customer base and agency records." [Record No. 10, p. 11]

An unjust enrichment claim has three elements: "(1) [a] benefit conferred upon defendant at plaintiff[']s expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."   *Furlong Dev. Co., LLC v. Georgetown-Scott Planning and Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016) (quoting

*Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)).  "Because unjust enrichment is rooted in equity and law trumps equity . . . unjust enrichment is unavailable when the terms of an express contract control."  *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017) (citations and internal quotation marks omitted)).  Along the same lines, "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed."  *Id.* (alteration in original) (quoting *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)).  Thus, dismissal of the unjust enrichment claim under Rule 12(b)(6) is appropriate where an express contract controls the issues raised in an unjust enrichment claim and the plaintiff cannot adequately plead a contract claim.  *See Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 44 (6th Cir. 2021); *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006).

Here, the Agreement was terminable at-will.  Additionally, most of the termination payments provided for in the Agreement are not affected by moving customer accounts out-of-market so long as they stay in state.  A few terminations payments (those by State Farm Mutual Automobile Insurance Company relating to health insurance accounts) may be affected by the reassignment of accounts, but the contract expressly contemplates that this could occur.

Further, Crump's argument that State Farm inappropriately took control of his customer base and agency records is unavailing.  As described above, Section I(C) of the Agreement provides that manuals, forms, records, and other materials provided to Crump remain the property of State Farm.  Section I(D) provides that policyholder information, the location of insured property, and expiration and renewal dates of policies are trade secrets "wholly owned by the [State Farm] Companies" and that forms or other materials where such information is recorded is "the sole and exclusive property of the Companies."  [Record No. 1-1, p. 14]  And

Section III(D) of the Agreement required Crump to "return[] or ma[ke] available for return" all property belonging to State Farm within 10 days of the contract's termination.  [*Id.* at p. 15.]  While alleging that he was an employee of State Farm rather than an independent contractor, Crump asserts that State Farm retained complete ownership over his book of business.  [Record No. 1-1, p. 4, ¶ 7(b)]  These provisions of the Agreement largely seem to support this point.  But the contractual provisions giving the insurance company ownership of his book of business also condone the conduct he claims to be inequitable.

State Farm aptly sums up this claim by remarking that Crump alleges unjust enrichment "for enforcing an Agent's Agreement containing terms authorizing the exact consequences [he] now contests."  [Record No. 13, pp. 7-8]  The Agreement controls the issues raised in the claim, and Crump has not pleaded facts indicating an inequitable retention of a benefit owed to him.  Accordingly, the claim contained in Count VII will be dismissed.

### G.  Unconscionable Contract

State Farm argues that the claim outlined in Count VIII should be dismissed because no cause of action exists for unconscionability.  [Record Nos. 9, p. 16 and 13, p. 8]  Crump responds by agreeing that no independent cause of action for unconscionability exists but contends that the allegations contained in this count constitute an affirmative defense to the terminable at-will provision of the Agreement and should not be dismissed because the enforceability of that provision is a central issue in this case.  [Record No. 10, p. 12]

"Kentucky does not recognize an affirmative claim for unconscionability.  Rather, unconscionability is a defense to enforcement of a contract."  *Webb v. Republic Bank & Trust Co.*, No. 3:11–CV–00423, 2013 WL 5447709, at *5 (W.D. Ky. Sept. 30, 2013) (citing *Wickliffe Farms, Inc. v. Owensboro Grain Co.*, 684 S.W.2d 17 (Ky. Ct. App. 1984); *Louisville*

*Bear Safety Service v. South Central Bell Telephone Co.*, 571 S.W.2d 438 (Ky. Ct. App. 1978); Restatement (Second) of Contracts § 208 (1981)).  And in Count VIII, as pleaded, Crump plainly seeks affirmative relief in the form of damages resulting from State Farm's performance of the allegedly unconscionable contract.  [*See* Record No. 1-1, p. 11, ¶ 64.]

Crump concedes that he has not pleaded a cause of action in this count but asserts that he can raise unconscionability as an affirmative defense.  However, an affirmative defense is a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."  *December Farm Int'l, LLC v. December Estate, LLC*, No. 2019-CA-0983-MR, 2021 WL 1823278, at *7 (Ky. Ct. App. May 7, 2021) (unpublished) (quoting *Affirmative Defense*, BLACK'S LAW DICTIONARY (11th ed. 2019)).  Moreover, Rule 8(c) contemplates that affirmative defenses are pleaded in response to other pleadings.  Crump has not provided any authority to support the argument that the unconscionability allegations as pleaded could be asserted in his Complaint, as an affirmative defense or otherwise.  Accordingly, this count and its allegations will be dismissed.

### H.  Punitive Damages

Finally, State Farm argues that Count IX should be dismissed because there is no independent cause of action for punitive damages and all other claims fail.  [Record No. 9, pp. 16-17] Crump concedes that he does not assert a cause of action but contends that it is premature to dismiss his claim for punitive damages.  [Record No. 10, pp. 12-13]

A plaintiff cannot assert an independent cause of action for punitive damages under Kentucky law.  *E.g.*, *Price v. AgriLogic Ins. Servs., LLC*, 37 F. Supp. 3d 885, 901 (E.D. Ky. 2014) (citing *Shibeshi v. Alice Lloyd Coll.*, Civ. A. No. 11–101–ART, 2011 WL 4970781, at

*5 (E.D. Ky. Oct. 19, 2011)).   "[D]ismissal of a punitive damages count is proper when the underlying tort claims have been dismissed."   *Id.*   (citing *Russell v. Rhodes*, No. 2003-CA-000923-MR, 2005 WL 736612, at *5 (Ky. Ct. App. Apr. 1, 2005) (unpublished)). Because Crump has failed to plead any plausible tort claim, Count IX will be dismissed.

### IV.  Conclusion

As discussed herein, Crump has not pleaded any plausible claim for relief.  Assuming that he was an employee of State Farm who could bring a KCRA claim, Count V fails because Crump has not alleged facts indicating he was terminated because of his age and he has also failed to plead facts that meet the specific-practice requirement for claims brought under disparate-impact theories.  Crump has not stated a plausible claim in Count I for breach of the implied covenant of good faith and fair dealing because the Agreement was terminable at-will and he cannot use a KCRA public policy exception theory to avoid this term of the contract. Provisions of the Agreement also foreclose recovery under the facts alleged in support of his intentional interference with contract rights (Count II), fraud (Count III), estoppel (Count IV), and unjust enrichment (Count VII) claims.  Additionally, Crump has not pleaded a plausible slander or defamation claim in Count VI because he identifies only one specific defamatory statement published to identifiable third parties, and that statement was true.  Finally, his unconscionability and punitive damages claims are not independent causes of action, and Crump has offered no reasons sufficient to maintain the allegations set forth in Counts VIII and IX.

Based on the foregoing analysis and discussion, it is

**ORDERED** as follows:

1.      The defendants' motion to dismiss [Record No. 9] is **GRANTED**.

2.      Plaintiff Fred Crump, Jr.'s Complaint is **DISMISSED**.  All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  November 22, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky